Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| B. FERNÁNDEZ & HNOS., INC.; PAN PEPÍN, INC.; MARVEL INTERNATIONAL, INC.; B. FERNÁNDEZ INVESTMENT, CORP.<br><br>Apelante<br><br>v.<br><br>INTEGRAND ASSURANCE COMPANY; OFICINA DEL COMISIONADO DE SEGUROS DE PUERTO RICO; COMPAÑÍA ASEGURADORA ABAC Y DEF; CORPORACIONES UVW Y XYZ; FULANO DE TAL; MENGANO DE TAL<br><br>Apelados | KLAN202200737 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso núm.: BY2019CV02415<br><br>Sobre:<br>Cobro de Dinero; Prácticas Desleales en el Ajuste de Reclamaciones; Violación Código de Seguros |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 31 de enero de 2023.

Comparecen la parte apelante, compuesta por las empresas B. Fernández & Hnos., Inc. (B. Fernández), Pan Pepín, Inc. (Pepín), B. Fernández Investment, Corp. (BFI) y Marvel International, Inc. (Marvel), en conjunto los Apelantes, mediante Recurso de Apelación en el que solicitan que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 25 de julio de 2022, notificada el 29 de julio de 2022. En el referido dictamen, el foro primario condenó a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (Asociación) al pago global de $300,000.00, a favor de los Apelantes, en virtud del Artículo 38.080 del Código de Seguros de Puerto Rico, 26 LPRA sec. 3808.

Evaluados los autos del caso a la luz del derecho aplicable, confirmamos la *Sentencia* dictada por el tribunal apelado.

**I.**

Las cuatro corporaciones apelantes iniciaron una reclamación ante la compañía de seguros, Integrand Assurance Company (Integrand) por los daños causados a sus propiedades como consecuencia del paso del Huracán María por Puerto Rico el 20 de septiembre de 2017.

Según expusieron, éstos suscribieron con Integrand una póliza de seguro número CP-028098050-01, que cubría las pérdidas sufridas que ascendieron a $8,962,142.00. Tras un proceso de negociación, las partes apelantes decidieron transigir la reclamación por la suma de $7,500,202.00. No obstante, Integrand condicionó el pacto transaccional a la firma de un documento intitulado *Acceptance of Payment and Full Release of Liability*. Mediante el referido acuerdo, suscrito por las partes el 25 de octubre de 2018, Integrand pagó a los Apelantes la cantidad de $3,500,000.00. A su vez, se dedujo la suma de $1,022,941.00, por concepto de deducible de la póliza, quedando un balance pendiente de pago por la cantidad de $2,977,262.00. Integrand se obligó a hacer un pago expedito por la cantidad de $2,102,871.00, en o antes del 25 de noviembre de 2018. En tanto, las partes apelantes, accedieron a posponer el pago restante por la suma de $874,391.00, hasta que se completaran determinadas obras de reparación en los bienes afectados.

Sin embargo, la compañía aseguradora no cumplió con el pago acordado dentro del término pactado. No obstante, la aseguradora comenzó a hacer pagos parciales que fueron objetados por los Apelantes. Ante ello, el 8 de mayo de 2019, las empresas apelantes presentaron una *Demanda* contra Integrand, la Oficina del Comisionado de Seguros de Puerto Rico y otros, en cobro de dinero, prácticas desleales en el ajuste de reclamaciones y violación al Código de Seguros. Reclamaron el pago por la cantidad de

$1,477,262.00, más los intereses que ha devengado desde el 25 de noviembre de 2018 hasta el presente.

Mientras, el 31 de mayo de 2019, el Tribunal de Primera Instancia, Sala de San Juan, ordenó el Procedimiento de Rehabilitación en cuanto a Integrand, conforme a las disposiciones del capítulo 40 del Código de Seguros de Puerto Rico, 26 LPRA sec. 4001 *et seq*[1]. A tenor, el 14 de junio de 2019, el foro *a quo* emitió *Sentencia Administrativa* en la que ordenó la paralización de los procedimientos por 90 días y decretó el archivo administrativo del caso de autos, según determinado por el artículo 40.120 del Código de Seguros de Puerto Rico, 26 LPRA sec. 4012[2].

El 23 de septiembre de 2019, el TPI de San Juan ordenó la conversión del procedimiento de rehabilitación de Integrand a uno de liquidación al amparo del Artículo 40.140 del Código de Seguros de Puerto Rico, 26 LPRA sec. 4014[3]. En consecuencia, el 25 de septiembre de 2019, el foro de instancia de San Juan declaró insolvente a Integrand y emitió una *Orden de Liquidación* contra la aseguradora. Asimismo, el TPI inició el procedimiento de liquidación y designó como Liquidador al Comisionado de Seguros de Puerto Rico[4].

Después de varios trámites procesales, el 22 de julio de 2020, los Apelantes presentaron una *Moción en Solicitud de Reapertura y Continuación de los Procedimientos*, en la que solicitaron al tribunal *a quo* la reapertura del caso de epígrafe, la continuación de los procedimientos y la dilucidación de las controversias presentadas. Además, solicitaron la comparecencia inmediata de la Asociación de Garantía de Seguros Misceláneos como representante de Integrand[5].

---

[1] Véase el Caso Civil Núm. SJ2019CV05526.
[2] Véase la página 34 en el Apéndice del Recurso de Apelación.
[3] Véase Orden de Liquidación de 23 de septiembre de 2019, notificada el 25 de septiembre de 2019, Caso Civil Núm. SJ2019CV05526, en el Sistema SUMAC.
[4] Véase la página 44 en el Apéndice del Recurso de Apelación.
[5] Véase la página 55 en el Apéndice del Recurso de Apelación.

El 25 de agosto de 2020, la Asociación presentó una *Moción de Desestimación* en la que expuso que, ante la liquidación de Integrand y ante la inexistencia de un deber en ley que vinculara a la Asociación con lo reclamado por los Apelantes en la *Demanda*, procedía la desestimación de la causa[6]. La parte apelante se opuso a la petición de la Asociación. Adujo que la Asociación estaba obligada a pagar el reclamo incoado, independiente del ajuste que se llevó a cabo y conforme dispone el Artículo 38.050(6) del Código de Seguros, 26 LPRA sec. 3805(6). La Asociación replicó. Evaluadas las solicitudes de las partes, el 22 de octubre de 2020, el TPI dictó Sentencia en la que decretó la desestimación sin perjuicio del pleito[7]. No obstante, este dictamen fue revocado por este Tribunal mediante Sentencia emitida el 29 de octubre de 2021[8]. En el referido dictamen, este foro intermedio resolvió que la reclamación instada por los Apelantes estaba cubierta por la Asociación, por tratarse de una reclamación incoada bajo la póliza de seguro de propiedad y que no ha sido pagada en su totalidad.

El 2 de junio de 2022, los Apelantes presentaron una *Moción de Sentencia Sumaria*, en la que alegaron que ante la inexistencia de una controversia sustancial sobre el incumplimiento del pago pactado por Integrand procedía que se dictara sentencia sumaria a su favor. El 30 de junio de 2022, la Asociación presentó su *Oposición Juramentada a Moción de Sentencia Sumaria*[9].

Después de evaluar las posiciones de ambas partes, el 25 de julio de 2022, el TPI dictó *Sentencia* en la que condenó a la Asociación al pago global de $300,000.00, a favor de los Apelantes, conforme al Artículo 38.080 del Código de Seguros, *supra*.

---

[6] Véase la página 59 en el Apéndice del Recurso de Apelación.
[7] Véase la página 78 en el Apéndice del Recurso de Apelación.
[8] Véase la página 82 en el Apéndice del Recurso de Apelación.
[9] Véase la página 418 en el Apéndice del Recurso de Apelación.

Inconformes, los Apelantes presentaron una *Moción de Reconsideración y Solicitud de Vista Argumentativa* que fue declarada No Ha Lugar por el TPI el 16 de agosto de 2022.

Aún insatisfechos, los Apelantes acudieron ante nosotros, mediante Recurso de Apelación, en el que señalaron los siguientes dos errores:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A ACOGER TODOS LOS HECHOS INCONTROVERTIDOS Y MEDULARES ADELANTADOS POR LOS DEMANDANTES EN SU MOCIÓN DE SENTENCIA SUMARIA, A PESAR DE QUE NINGUNO DE ESOS HECHOS -SUSTENTADOS CADA CUAL CON EVIDENCIA ATINENTE- FUE PROPIAMENTE CONTROVERTIDO POR LA PARTE DEMANDADA Y A PESAR DE QUE CADA UNO DE ESTOS HECHOS CONSTA FIELMENTE EVIDENCIADO.

> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU INTERPRETACIÓN DEL ARTÍCULO 38.080, SEGÚN ENMENDADO POR LA LEY NÚM. 262 DE 13 DE AGOSTO DE 2008, Y AL DETERMINAR QUE LA ASOCIACIÓN DE GARANTÍA DE SEGUROS MISCELÁNEOS DE PUERTO RICO DEBÍA RESPONDER FRENTE A LOS CUATRO DEMANDANTES HASTA EL LÍMITE DE $300,000.

## II.

## A.

El Art. 1042 del Código Civil de Puerto Rico de 1930[10], según enmendado, 31 LPRA sec. 2992, ("Código Civil"), enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico. Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia". *Íd.* En particular, sobre las obligaciones de naturaleza contractual, el Art. 1206 establece que un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio".[11]

---

[10] El referido Código Civil de Puerto Rico de 1930, según enmendado, fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq.* Para fines de la presente controversia, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia ante nuestra consideración.

[11] 31 LPRA sec. 3371.

Ahora bien, para que un contrato sea fuente de obligaciones es necesario que concurran los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca. Arts. 1213 y 1230 del Código Civil, 31 LPRA secs. 3451 y 3391; *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 690-691 (2001). De manera que, al concurrir los referidos elementos nace una obligación; desde el punto de vista del acreedor, existe un derecho a exigir su cumplimiento y, desde la perspectiva del deudor, existe el deber de cumplirla.

Uno de los contratos regulados por nuestro Código Civil es el de transacción. El contrato de transacción es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio". (Citas omitidas.) *López Tristani v. Maldonado*, 168 DPR 838, 846 (2006). Véase, además: Art. 1709 del Código Civil de Puerto Rico, 31 LPRA sec. 4821; *Mun. San Juan v. Prof. Research*, 171 DPR 219 (2007); *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006); *Igaravidez v. Ricci*, 147 DPR 1, 5 (1998).

Por su parte, los elementos constitutivos de un contrato de transacción son: (1) una relación jurídica incierta y litigiosa; (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable, y (3) las recíprocas concesiones de las partes. Art. 1709 del Código Civil de Puerto Rico, 31 LPRA sec. 4821. Véase, además: *Mun. San Juan v. Prof. Research,* supra; *López Tristani v. Maldonado Carrero*, supra; *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 DPR 860, 870 (1995). En términos generales, toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones. *Citibank*

*v. Dependable Ins. Co., Inc.,* 121 DPR 503, 512 (1988); *Sucn. Román v. Shelga Corp.,* 111 DPR 782, 791 (1981).

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa. Art. 1213 del Código Civil, 31 LPRA sec. 3391. Sobre la causa de un contrato de transacción, nuestro Alto Foro ha expresado que "[e]n conjunto, el litigio y las recíprocas concesiones constituyen los elementos de la causa". *López Tristani v. Maldonado Carrero,* supra, pág. 857, citando a E. López de Barba, *El contrato de transacción, su resolución por incumplimiento,* Murcia, Eds. Laborum, 2001, pág. 78.

En armonía con lo anterior, en todo contrato de transacción, "[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio". S. Tamayo Haya, *El Contrato de Transacción,* Madrid, Ed. Thomson/Civitas, 2003, pág. 141. Véase, además: López de Barba, *op. cit.,* pág. 89.

El Máximo Foro en *Mun. San Juan v. Prof. Research,* supra, citando a Santos Briz, indica que la "reciprocidad en las prestaciones es la base indispensable de este contrato". J. Santos Briz y otros, *Tratado de Derecho Civil,* Barcelona, Ed. Bosch, 2003, T. IV, pág. 583. Por lo tanto, es necesario que las partes en este tipo de contrato "sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida". Tamayo Haya, *op. cit.,* pág. 210. Véase: *López Tristani v. Maldonado Carrero,* supra, pág. 857. Es por ello que, "[l]a consecuencia inmediata será que a falta de recíprocas concesiones no estaremos ante una transacción por falta de causa". Tamayo Haya, *op. cit.,* pág. 144.

**B.**

La Ley Núm. 72-1991, creó la Asociación de Garantías de Seguros Misceláneos de Puerto Rico y añadió el Capítulo 38 al

Código de Seguros de Puerto Rico. 26 LPRA secs.3801-3820. Este capítulo comprende las disposiciones referentes a dicha entidad legal, sin fines de lucro, que está compuesta por todos los aseguradores autorizados a tramitar seguros en Puerto Rico, excepto aquellos expresamente excluidos por la ley. 26 LPRA sec. 3806.

El propósito principal del Capítulo 38 es crear un mecanismo para el pago de las reclamaciones cubiertas bajo determinadas pólizas de seguro, como resultado de la insolvencia de un asegurador. 26 LPRA sec. 3802. Además, se pretende evitar dilaciones excesivas en el pago y evitar las pérdidas financieras a los reclamantes o tenedores de pólizas. *Íd*; *San José Realty SE v. El Fénix de PR*, 157 DPR 427, 448 (2002). Para lograr dicho propósito, el Capítulo 38 se interpretará liberalmente. 26 LPRA sec. 3804.

Como base para las disposiciones incluidas en dicho capítulo se utilizó la legislación modelo redactada y promovida por la Asociación Nacional de Comisionados de Seguros (NAIC, por sus siglas en inglés), conocida como el *Property and Casualty Insurance Guaranty Association Model* Act. Exposición de motivos, Ley Núm.72-1991.

Este capítulo cubre toda clase de seguro, excepto reaseguro y aquellos incluidos a modo taxativo en el Art. 38.030 del Código de Seguros, 26 LPRA sec. 3803. *Rodríguez v. Longhorn Steakhouse*, 202 DPR 158, 164 (2019). Los poderes y deberes de la Asociación están determinados en el Artículo 38.080 de la referida legislación que dispone como sigue:

> (a) La Asociación:
>   (1) Vendrá obligada a pagar reclamaciones cubiertas existentes antes de la determinación de la insolvencia y las que surjan antes de la más temprana de las siguientes fechas:
>     (A) El final del período de treinta (30) días después de la determinación de insolvencia;
>     (B) la fecha de expiración de la póliza;
>     (C) la fecha en que el asegurado sustituya la póliza u ocasione su cancelación.

Independientemente de otras disposiciones de este capítulo, una reclamación cubierta no incluirá una reclamación radicada con la Asociación después de la fecha final que fije el tribunal para la radicación de reclamaciones contra el liquidador o administrador del asegurador insolvente. La Asociación sólo pagará aquella cantidad de cada reclamación cubierta que exceda de cien (100) dólares. Dicha cantidad será un deducible del cual no responderá el caudal del asegurador insolvente.

(2) Satisfará sus obligaciones con respecto a las reclamaciones cubiertas de conformidad con los términos, condiciones y límites de la póliza del asegurador insolvente. Disponiéndose, sin embargo, que en ningún caso la Asociación pagará en exceso de trescientos mil dólares (300,000) por evento independientemente del número de reclamantes, ni más de un millón de dólares (1,000,000) como agregado anual, independientemente del número de eventos cubiertos bajo esa póliza. La Asociación se considerará como el asegurador hasta el límite de su obligación con respecto a las reclamaciones cubiertas y hasta tal límite tendrá todos los derechos, poderes y obligaciones del asegurador insolvente como si éste no estuviere insolvente.

(3) [...]

(4) Investigará las reclamaciones presentadas a la Asociación y ajustará, negociará, transigirá y pagará las reclamaciones cubiertas hasta el límite de la obligación de la Asociación, y desestimará todas las otras reclamaciones y podrá revisar las transacciones, los relevos y sentencias en las cuales fueron partes el asegurador insolvente o sus asegurados para determinar hasta qué punto dichas transacciones, relevos y sentencias puedan ser propiamente objetadas. La Asociación sólo tramitará aquellas reclamaciones que se hayan presentado dentro del período establecido conforme a las disposiciones del Artículo 40.190 de este Código, aun cuando se haya reclamado por la vía judicial.

[...]. 26 LPRA sec. 3808(1).

En resumen, la referida norma establece que la Asociación vendrá obligada a pagar reclamaciones cubiertas existentes antes de la determinación de insolvencia de un asegurador. Además, sufragará tal obligación conforme a los términos, condiciones y límites de la póliza del asegurador insolvente. 26 LPRA sec. 3808 (2); *Montañez v. U.P.R.*, 156 DPR 395, 416 (2002).

Una reclamación cubierta por la Asociación está definida en el Artículo 38.050(6) como:

(6) [...] una reclamación no pagada, incluyendo una de primas no devengadas que surja de, y esté dentro de la cubierta y esté sujeta a los límites aplicables de una póliza de seguro a la cual aplique este capítulo que haya sido emitida por un asegurador conforme a lo dispuesto en este Código, si tal asegurador se convierte en asegurador

insolvente luego de la fecha de vigencia de este capítulo y donde:

(a) El reclamante o el asegurado sea un residente de Puerto Rico al momento en que ocurra el suceso contra el cual se asegura. Para entidades que no sean un individuo, la residencia de un reclamante o de un asegurado es el estado donde radica su sitio principal de negocio al momento de ocurrir el evento asegurado; o

(b) la propiedad de la cual surge la reclamación está permanentemente localizada en Puerto Rico. 26 LPRA sec. 3805(6).

De ordinario, los pleitos pendientes contra el asegurador insolvente deben ser desestimados y remitidos al foro que administra el procedimiento de liquidación. *Rodríguez v. Longhorn Steakhouse*, supra, pág.163. No obstante, a manera de excepción, existen reclamaciones que no tienen que ser desestimadas y remitidas al foro de liquidación. Esto sucede cuando, por virtud de ley, la Asociación está obligada a responder por la aseguradora insolvente. *Íd.* En estos casos, la Asociación opera como una aseguradora de la aseguradora insolvente y responderá por el pago de la sentencia que en su día se emita, de conformidad con los términos, condiciones y límites de la póliza del asegurador insolvente. *Íd.*; Artículo 38.080 del Código de Seguros, *supra.*

**C.**

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite al tribunal disponer de un caso sin celebrar vista en su fondo. *Abrams Rivera v. E.L.A.*, 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

A tales efectos, la Regla 36.3(e) de Procedimiento Civil provee que, para que proceda dictar sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surja que no hay controversia real sustancial en cuanto a

ningún hecho material y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra, pág. 214; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006).

El Tribunal Supremo de Puerto Rico ha reiterado que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129-130 (2012); *Ramos Pérez v. Univisión*, supra, pág. 213. De modo que, ante la clara ausencia de certeza sobre todos los hechos materiales en controversia, no procede dictar sentencia sumaria. *Mejías et al. v. Carrasquillo et al.*, supra; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).

Por su parte, le corresponde a la parte promovida rebatir dicha moción por vía de declaraciones juradas u otra documentación que apoye su posición, pues si bien el no hacerlo no significa necesariamente que ha de emitirse el dictamen sumario automáticamente en su contra, tal omisión lo pone en riesgo de que ello ocurra. *Ramos Pérez v. Univisión*, supra, pág. 215; *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383-384 (2009).

De acuerdo con la Regla 36.3(c) de Procedimiento Civil, cuando se presenta una moción de sentencia sumaria, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que se encuentra obligada a contestar de forma tan detallada y específica como lo haya hecho la parte promovente, ya que, si no lo hace de esta forma, se dictará la sentencia sumaria en su contra, si así procede. 32 LPRA Ap. V, R. 36.3(c).

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma. *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721. No obstante, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Const. José Carro v. Mun. Dorado*, supra; *Ramos Pérez v. Univisión,* supra, pág. 214.

Resulta menester precisar que:

[A]l dictar sentencia sumaria el tribunal deberá: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011); que cita a *Vera v. Dr. Bravo,* 161 DPR 308, 333 (2004). Véase, además, *López v. Miranda,* 166 DPR 546, 562-563 (2005).

A tales efectos, el juzgador no está limitado por los hechos o documentos que se aduzcan en la solicitud, sino que debe considerar todos los documentos del expediente, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. *Const. José Carro v. Mun. Dorado*, supra; *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 280-281 (1990).

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta. *Const. José Carro v. Mun. Dorado*, supra, pág. 129.

Ahora bien, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil. *Íd.*, pág. 118. Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos". *Íd.*, pág. 119. Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí. *Íd.*

Claro está, lo anterior en nada altera la reiterada normativa en cuanto a que, cuando se utiliza la sentencia sumaria, "el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". *Mejías et al. v. Carrasquillo et al.*, supra; *MGMT. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 611 (2000).

**III.**

Los Apelantes alegan que el foro de instancia erró al acoger solamente 15 hechos como incontrovertidos e ignorar los otros hechos esenciales que esbozaron en su petición sumaria, sin que la parte apelada los controvirtiera conforme a la Regla 36.3(b)(c) de Procedimiento Civil, *supra.* Aducen que esta omisión provocó que el tribunal apelado errara en su análisis, al equiparar las

reclamaciones de cada una de las corporaciones como una sola cuando en realidad no lo son. Insisten en que la póliza multilínea aseguraba a los Apelantes y sus propiedades de manera individual. Como fundamento para su argumentación, los Apelantes afirman que el huracán María provocó múltiples eventos que afectaron a los Apelantes de manera separada e independiente. Por ello, entienden que el TPI erró al interpretar el Artículo 38.080 del Código de Seguros, *supra*, y determinar que los Apelantes solamente tienen derecho a cobrar una suma total de $300,000.00. Según éstos, el evento al que hace referencia el precitado artículo es aquel que causa un solo daño, en un lugar, a una parte, y que puede ser fácilmente separado de otros daños y eventos. Por ende, razonaron que, ante la existencia de múltiples eventos cubiertos bajo una sola póliza, el límite de $300,000.00 se aplica a cada evento.

Por su parte, la Asociación arguye que la pretensión de los Apelantes, en definir un evento como el reclamo del daño de cada apelante, atenta contra los principios básicos de hermenéutica que establecen que cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir con su espíritu[12]. Por ello, asegura que un evento, en el contexto del Código de Seguros, es el suceso que causa el reclamo. Por consiguiente, la Asociación puntualiza que, según la redacción del Artículo 38.080, el límite de responsabilidad de la Asociación respecto a las reclamaciones cubiertas por ésta es de $300,000.00.

Primeramente, debemos atender el planteamiento esbozado por los Apelantes sobre el supuesto error que cometió el TPI, al no acoger todos los hechos esenciales alegados por éstos en su petición sumaria y que esto, presuntamente, causó que el foro de instancia incidiera en el análisis de la controversia. Veamos.

---

[12] Véase el Artículo 19 del Código Civil de Puerto Rico, 31 LPRA sec. 5341.

Después de revisar con detenimiento la *Moción de Sentencia Sumaria*, presentada por los Apelantes, y su oposición, sometida por la Asociación, no podemos coincidir con el señalamiento de los Apelantes. De la *Sentencia* surge con claridad que el tribunal *a quo* determinó que no existe controversia sobre los hechos esenciales alegados por los Apelantes, y que la Asociación los aceptó como ciertos. Así pues, luego de examinar las peticiones de las partes, decretamos que los hechos materiales determinados por el foro primario no están controversia. Ahora bien, el TPI determinó que la controversia en el caso de marras más bien se limitaba a la interpretación dada por las partes sobre el Artículo 38.080 del Código de Seguros, *supra*. Ante esto, corresponde revisar *de novo* si, en efecto, el foro sentenciador aplicó correctamente el derecho a la controversia ante nuestra consideración. *Meléndez González, et al. v. M. Cuebas*, supra.

El inciso 2 del Artículo 38.080 del Código de Seguros, según enmendado, dispone como sigue:

> (a) La Asociación:
> [...]
> (2) Satisfará sus obligaciones con respecto a las reclamaciones cubiertas de conformidad con los términos, condiciones y límites de la póliza del asegurador insolvente. **Disponiéndose, <u>sin embargo,</u> que en ningún caso la Asociación pagará en exceso de trescientos mil dólares ($300,000) <u>por evento</u> independientemente del número de reclamantes**, ni más de un millón de dólares ($1,000,000) como agregado anual, independientemente del número de eventos cubiertos bajo esa póliza. La Asociación se considerará como el asegurador hasta el límite de su obligación con respecto a las reclamaciones cubiertas y hasta tal límite tendrá todos los derechos, poderes y obligaciones del asegurador insolvente como si éste no estuviere insolvente. (Énfasis suplido). 26 LPRA sec. 3808(2).

Al interpretar las leyes, nuestro ordenamiento jurídico ha establecido ciertas normas de hermenéutica legal, que sirven de guía al momento de ejercer nuestra función adjudicativa. *Const. José Carro v. Mun. Dorado*, supra, pág. 126. Como principio rector, destaca el dispuesto en el Artículo 19 del Código Civil de Puerto Rico,

31 LPRA sec. 5341, que establece que "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".

A tenor, al examinar el texto de la norma en pugna surge con meridiana claridad que la Asociación no podrá pagar en exceso de $300,000.00 **por evento**. Ello, **independiente del número de reclamantes.** En el caso de marras, es un hecho incontrovertido que el evento que causó los daños que reclaman los Apelantes fue el huracán María. Interpretar que cada uno de los daños sufridos por las distintas corporaciones constituye un evento independiente para cada uno de los reclamantes, es otorgarle un significado distinto a la letra clara del estatuto. Asimismo, resulta irrazonable concluir que cada una de las corporaciones apelantes debe ser compensada con un pago de $300,000.00. Ello es contrario a lo establecido en el referido Art. 38.080, *supra*, pues el estatuto limita el pago de $300,000, **independiente del número de reclamantes.** Resolver lo contrario daría al traste con la intención del precitado artículo de limitar la responsabilidad de la Asociación en cuanto al pago de las reclamaciones cubiertas por ésta[13].

Conforme a lo anterior, concluimos que el foro de instancia no incidió al determinar que la responsabilidad de la Asociación con respecto al pago reclamado por los Apelantes se limita al pago total por la cantidad de $300,000.00.

## IV.

Por los fundamentos que anteceden, confirmamos la Sentencia emitida por el Tribunal de Primera Instancia, Sala de Bayamón.

Notifíquese.

---

[13] Véase la Exposición de Motivos de la Ley Núm. 262-2008.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones