| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL XI | | |
|---|---|---|
| INTEGRATED CONSTRUCTION SERVICES, LLC<br><br>Peticionario<br><br>v.<br><br>CARLOS BELTRÁN, JESSICA BELTRÁN POR SI Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos | KLCE202301081 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso número: SJ2021CV03512<br><br>Sobre: COBRO DE DINERO |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de noviembre de 2023.

Comparece la parte peticionaria, Integrated Construction Services, LLC (ICS), quien nos solicita que *revisemos* la Resolución emitida el 22 de agosto de 2023, por el Tribunal de Primera Instancia, Sala Superior de Arecibo. Mediante dicho dictamen, el foro recurrido denegó la moción de Sentencia Sumaria Parcial radicada ICS, en la cual solicitaba la desestimación de la causa de acción de daños y perjuicios, por entender que el Acuerdo de Transacción pactado entre las partes no impedía a los Recurridos incoar dicha acción.

En el referido dictamen, el foro inferior, a su vez, denegó una solicitud de sentencia sumaria presentada por la parte recurrida, por entender que existen hechos en controversia que impiden resolver el caso por la vía sumaria.

Número Identificador

RES2023 _____

Examinada la solicitud de autos y la totalidad del expediente, *denegamos* la expedición del *Certiorari* por los fundamentos que expondremos a continuación.

**I**

Según surge del expediente, el matrimonio Beltrán contrató a ICS el 16 de julio de 2019, para la remodelación de su apartamento en el Condominio Puerta del Condado, ubicado en el Municipio de San Juan, por la cantidad de $415,690.00.[1] Debido a unos desacuerdos relacionados a los trabajos, incluyendo el incumplimiento con la fecha de entrega de la obra, las partes pactaron un Acuerdo de Transacción el 23 de diciembre del 2020, el cual estipulaba un nuevo balance de $56,631.54.[2] En este acordaron que ICS tenía un tiempo máximo de siete (7) semanas para culminar los trabajos explícitamente detallados en el acuerdo, a cambio de que los Beltrán renunciaran a cualquier reclamación procedente del contrato original.[3] Se pactó, además, que el pago del balance final se efectuaría cuando los Beltrán estuvieran satisfechos con el trabajo de ICS.[4]

No obstante, el 15 de febrero de 2021 —ya expirado el término pactado de siete (7) semanas—, ICS solicitó dos (2) semanas adicionales para culminar el proyecto, lo cual provocó que los Beltrán exigieran que ICS se retirase del apartamento.[5] Tres (3) días luego, ICS presentó su factura por el balance estipulado en el Acuerdo de Transacción.[6] Ante la negativa del matrimonio Beltrán de cumplir con el pago, ICS instó una demanda en cobro de dinero

---

[1] Véase *Resolución* del 22 de agosto de 2022, Determinación de hechos #1, pág. 3.
[2] Véase *Resolución* del 22 de agosto de 2022, Determinación de hechos #8, pág. 4.
[3] Véase *Resolución* del 22 de agosto de 2022, Determinación de hechos #9-11, pág. 5.
[4] Véase *Resolución* del 22 de agosto de 2022, Determinación de hechos #18, pág. 7.
[5] Véase *Resolución* del 22 de agosto de 2022, Determinación de hechos #26-27, pág. 9.
[6] Véase *Resolución* del 22 de agosto de 2022, Determinación de hechos #30, pág. 10.

el 7 de junio de 2021.[7] Acto seguido, los Beltrán reconvinieron alegando dos causas de acción, a saber, los alegados gastos incurridos para completar los trabajos, en adición a daños emocionales tras un alegado trato impredecible, irrespetuoso y poco profesional de parte de ICS.[8]

Continuado el caso, el 28 de abril de 2023 la parte recurrida presentó una moción de *Sentencia Sumaria Parcial* en la cual adujo que procedía que se dictara sentencia que declarase el incumplimiento de ICS con el Acuerdo de Transacción.[9] De igual forma, ICS presentó su propia moción de *Sentencia Sumaria Parcial* el 1 de mayo de 2023, donde arguyó que toda causa de acción o reclamo de daños y perjuicios debía ser desestimada ya que el Acuerdo de Transacción le relevó de toda causa de acción, controversia, y daño relacionado al contrato original —de 16 de julio de 2019— que no fuese relacionado a los trabajos listados en el acuerdo.[10]

El TPI denegó ambas mociones. En cuanto a la moción de la parte recurrida, determinó que estaba impedido de resolver la controversia por la vía sumaria debido a que desconocía cuales trabajos faltaban por completar para el 15 de febrero de 2023 y por entender que existía incertidumbre sobre quien fue la parte responsable de la demora.[11] Con relación a la moción de ICS, el TPI entendió que no procedía desestimar la causa de acción de daños y perjuicios ya que los daños que se reclaman nacen del incumplimiento del Acuerdo de Transacción, y no del contrato original, y que no existía una cláusula en el Acuerdo de Transacción

---

[7] Véase Apéndice del recurso #6, pág. 23-26.
[8] Véase Apéndice del recurso #5, pág.40-43.
[9] Véase Apéndice del recurso #6, pág.45-89.
[10] Véase Apéndice del recurso #7, pág.90-141.
[11] Véase *Resolución* del 22 de agosto de 2022, pág. 17.

que sugiriera que el matrimonio Beltrán renunció a presentar una reclamación de daños y perjuicios por algún incumplimiento.[12]

Insatisfecho, ICS presentó un recurso de *Certiorari* el 29 de septiembre de 2023 donde alega los siguientes errores:

> **"Erró el Tribunal de Primera Instancia en sus determinaciones de hechos, debido a que varios hechos determinados no se sostienen con la prueba presentada"**

> **"Erró el Tribunal de Primera Instancia al declarar no ha lugar la solicitud de sentencia sumaria parcial radicada por el Peticionario por entender que la causa de acción de daños y perjuicios contenida en la Segunda Causa de Acción no fue renunciada en el acuerdo de transacción."**

> **"Erró el Tribunal de Primera Instancia al no resolver que el efecto de un incumplimiento parcial de ICS es la reducción de la prestación su favor, no así la eliminación de la obligación de pago de los Beltrán. Así también erró el TPI al emitir expresiones que prejuzgan la controversia a resolver"**

> **"Erró el Tribunal de Primera Instancia al detallar las controversias de hechos pendientes por resolver"**

Luego de varias incidencias procesales ante este Tribunal, el 25 de octubre de 2023, la parte recurrida presentó su *Alegato en Oposición*. Así, con el beneficio de la comparecencia de las partes y examinados los escritos presentados, procedemos a resolver.

**II.**

**A. Certiorari**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, 212 DPR ___ (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León*

---

[12] Véase *Resolución* del 22 de agosto de 2022, pág. 18.

*Corp. v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra.* Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León Corp. v. AIG, supra.* No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. Véase, *Scotiabank of PR v. ZAF Corp.,* 202 DPR 478, 486-487 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación,*

165 DPR 311, 322 (2005); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*, pág. 918.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago, supra*, pág. 581; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

### B. La sentencia sumaria

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, establece lo pertinente en cuanto a la *Sentencia Sumaria*. Dicho mecanismo procesal, es un remedio discrecional y extraordinario el cual tiene como fin la solución justa, rápida y económica de controversias en que lo único por dirimir sean controversias de derecho. *Rodríguez Méndez et al. v. Laser Eye Surgery*, 195 DPR 769, 785 (2016). Por tanto, quien promueva la sentencia sumaria deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. Ello, se hará cumpliendo con unos requisitos al momento de presentar la moción, entre estos, deberá incluir:

> [...]
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

[...] Regla 36.3 (a)(4) de Procedimiento Civil, 32 LPRA Ap.V.

A su vez, la parte que se oponga a la solicitud de sentencia sumaria, también, está obligada a cumplir con los requisitos de la mencionada Regla 36.3 (b)(2) de Procedimiento Civil, 32 LPRA Ap. V, específicamente:

> [...]
> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> [...]

En su oposición a la sentencia sumaria, la parte deberá "contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede". Regla 36.3 (c) de Procedimiento Civil, 32 LPRA Ap. V.

Al momento de resolver una moción de sentencia sumaria es necesario que el tribunal considere a fondo las alegaciones de la demanda y las defensas presentadas. Ello, con el fin de establecer si existe controversia con relación a los hechos esenciales o no. Por lo que, de existir dicha controversia, el tribunal no debe declarar ha lugar una petición de sentencia sumaria. Además, cualquier duda debe resolverse en contra de la parte promovente.

El Tribunal Supremo de Puerto Rico ha reiterado que, como regla general, no procede la sentencia sumaria en casos donde estén en controversia "elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa". *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010) (Citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994). Tampoco procede si: (1) existen hechos materiales controvertidos (2)

hay alegaciones afirmativas en la demanda que no han sido refutadas (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material o (4) como cuestión de derecho no procede. *Vera Morales v. Bravo*, 161 DPR 308, 333-334 (2004).

Nuestro más alto Foro ha recalcado que una decisión discrecional emitida por el TPI solo podrá ser revocada si se demuestra la existencia de abuso de su discreción. *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 434 (2013). Al mismo tiempo, reafirmó lo pautado en el caso *Vera Morales v. Bravo*, supra; en cuanto al estándar a utilizar en los casos en que tengamos que examinar las determinaciones del TPI sobre las mociones de sentencia sumaria que se interpongan. En esencia, nuestro Tribunal Supremo ha reiterado que este Foro apelativo intermedio habremos de utilizar:

> . . . los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit[s]*, deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114-115 (2015) (Citando a *Vera Morales v. Bravo*, supra, pág. 334-335)

Si se cumplen con estos requisitos y con los criterios establecidos por la precitada Regla 36 de Procedimiento Civil, este Tribunal podrá revisar la *Sentencia* emitida por el foro judicial primario. Siendo esta una revisión a la solicitud de sentencia sumaria de *novo*; cumpliendo a su vez con la Regla 36 de Procedimiento Civil, *supra. Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

Por último, este Tribunal de Apelaciones deberá: (1) examinar el expediente de la manera más favorable hacia la parte que se opuso a la moción de sentencia sumaria en el foro primario (2) revisar que la moción de sentencia sumaria y su oposición cumplen con los requisitos de la Regla 36 de Procedimiento Civil y (3) evaluar la existencia de hechos materiales en controversia y en caso de haberlos, el foro intermedio deberá cumplir con los criterios de la Regla 36.4 de Procedimiento Civil. *Meléndez González et al. v. M. Cuebas*, supra, pág. 102-103.

### C. Derecho de contratos

Nuestro sistema de derecho permite la libertad de contratación; siempre y cuando, los pactos, cláusulas y condiciones no sean contrarios a la ley, la moral o al orden público. Art. 1232 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9753.[13] Si se cumple con lo dispuesto, el contrato tendrá fuerza de ley entre las partes, por lo que ambas se obligan al cumplimiento de lo allí pactado y de sus consecuencias. Arts. 1233 y 1062 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9754 y 8982, respectivamente. En adición, "cuando los términos de un contrato son claros y no crean ambigüedades, estos se aplicarán en atención al sentido literal que tengan". *Corporación del Fondo del Seguro del Estado v. Unión de Médicos de la CFSE,* 170 DPR 443, 450 (2007).

Respecto al *contrato de transacción* sabemos que éste es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio." *López Tristani v. Maldonado,* 168 DPR 838 (2006) (citas omitidas); Art. 1497 del Código Civil de Puerto

---

[13] Toda mención subsiguiente al Código Civil de Puerto Rico se entenderá al Código Civil de 2020, 31 LPRA sec. 5311 *et seq.*, por ser el vigente al momento que se pactó el contrato de transacción.

Rico, 31 LPRA sec. 10641. Véase, además, *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006) *Igaravidez v. Ricci*, 147 DPR 1, 5 (1998). A saber, los elementos constitutivos de un contrato de transacción son: (1) una relación jurídica incierta litigiosa; (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable; y (3) las recíprocas concesiones de las partes. Art. 1497 del Código Civil de Puerto Rico, 31 LPRA sec. 10641; *López Tristani v. Maldonado Carrero, supra*; *Neca Mortg. Coorp. V. A & W. Dev. S.E.*, 137 DPR 860, 870 (1995); S. Tamayo Haya, *El contrato de transacción,* Thomson Civitas, Madrid, España pág. 75 (2003). En términos generales, toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones. *Citibank v. Dependable* Ins. *Co., Inc.*, 121 DPR 503, 512 (1988); *Suc. Román v. Shelga Corp.,* 111 DPR 782, 791 (1981).

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa. Art. 1237 del Código Civil, 31 LPRA sec. 9771. Sobre la causa de un contrato de transacción, nuestro Tribunal Supremo ha expresado que "[e]n conjunto, el litigio y las recíprocas prestaciones constituyen los elementos de la causa". *López Tristani v. Maldonado Carrero*, supra, citando a E. López de Barba, *El contrato de transacción, su resolución por incumplimiento*, Murcia, España, Ediciones Laborum, 2001, pág. 78). Por consiguiente, en todo contrato de transacción, "[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio [....]" Tamayo Haya, *op. cit.,* pág. 141. *Véase, además,* E. López de Barba, *op cit.,* pág. 89. Las recíprocas concesiones son sumamente importantes porque estas "constituyen

no tan sólo el medio esencial para el desarrollo de la causa del negocio transaccional, sino que éstas pasan a formar parte de la causa". *López Tristani v. Maldonado Carrero, supra.*

De manera similar, Santos Briz plantea que la "reciprocidad en las prestaciones es la base indispensable de este contrato ..." J. Santos Briz y otros, *Tratado de Derecho Civil,* 1ra ed., Barcelona, Editorial Bosch, S.A., 2003, Tomo IV, pág.583. Por tanto, es necesario que las partes en este tipo de contrato "sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida". Tamayo Haya, *op. cit.*, pág. 210; *López Tristani v. Maldonado Carrero, supra.*

### III.

Luego de examinar detenidamente el expediente del recurso ante nuestra consideración, no encontramos indicio de que el foro recurrido haya actuado de forma arbitraria, caprichosa, ni que haya abusado al ejercer su discreción, o cometido algún error de derecho. *Trans-Oceanic Life Ins. V. Oracle Corp,* 184 DPR 689, 709 (2012). Además, no identificamos fundamentos jurídicos que nos motiven a expedir el auto de *certiorari* solicitado, conforme a los criterios que guían nuestra discreción para ejercer nuestra facultad revisora en este tipo de recurso. Devolvemos el asunto al foro de origen para la continuación de los procedimientos.

### IV.

Por los fundamentos que anteceden, los que hacemos formar parte del presente dictamen, *denegamos* la expedición del auto de *Certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones