782

LA SUCESIÓN DE MARIO ROMÁN FEBRES, compuesta por su viuda CARMEN ANDINO VIGO y sus hijos MARIO, CARMEN MARINA y GENEROSA ROMÁN ANDINO, demandantes y recurrentes, *v.* SHELGA CORPORATION y HAMPTON DEVELOPMENT CORPORATION, demandadas y recurridas; LA SUCESIÓN DE MARIO ROMÁN FEBRES, ETC., demandantes y recurrentes, *v.* HAMPTON DEVELOPMENT CORPORATION, demandada y recurrida; LA SUCESIÓN DE MARIO ROMÁN FEBRES, ETC., demandantes y recurrentes, *v.* HAMPTON DEVELOPMENT CORPORATION, NATIONAL INSURANCE COMPANY y CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA, demandadas y recurridas.

*Números:* R-80-177, R-80-181, R-80-182      *Resueltos:* 14 de diciembre de 1981

*Luis M. Román* y *Nilda M. Landrón Bou,* abogados de los recurrentes; *Otero Suro & Otero Suro,* abogados de los recurridos Shelga Corporation y Hampton Development Corporation; *Rafael Álvarez Fortuño,* abogado de la Corporación de Renovación Urbana y Vivienda de Puerto Rico; *Aldo Segurola De Diego,* abogado de la recurrida National Insurance Company.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

A los fines de considerar los recursos de epígrafe decidimos consolidarlos por surgir que envuelven una cuestión de derecho común entre ellos.

El recurso R-80-177 se origina con demanda en cobro de dinero instada en 21 de julio de 1978 por Mario Román Febres (hoy su Sucesión), contra las empresas Shelga Corporation y Hampton Development Corporation "por concepto de material[es] y trabajo de construcción realizado y no pagado, en un proyecto en el Barrio Palmas [del municipio] de Cataño". La primera corporación demandada es subsidiaria de la segunda, o sea de Hampton Development Corporation.

El recurso R-80-181 se origina con una demanda en cobro de dinero instada también el 21 de julio de 1978 por el mismo demandante, contra Hampton Development Corporation y Matsuchita Electric Corporation "por concepto de material servido en una obra de Matsuchita Electric Corporation en la cual Hampton Development Corporation era la contratista general".

El recurso R-80-182 se origina con una demanda en cobro de dinero instada también el 21 de julio de 1978 por el mismo demandante, contra Hampton Development Corporation, National Insurance Company y Corporación de Renovación Urbana y Vivienda de Puerto Rico "por concepto de material servido en obras realizadas en el

Proyecto VBC 53 y en el Proyecto VBC 61 (Villa Prades)". La aseguradora demandada es fiadora del referido proyecto. La Corporación de Renovación Urbana y Vivienda es la dueña del proyecto.

La codemandada Hampton Development Corporation contestó la demanda en los tres casos mencionados precedentemente negando los hechos alegados, sin plantear defensa alguna contra las demandas. Por otro lado presentó simultáneamente sendas mociones en solicitud de sentencia sumaria contra el demandante por el siguiente fundamento:

> Que el demandante en el caso de epígrafe, en el caso civil número 76-1907 (904), Hampton Development Corporation vs. Mario Roman Febres, etc., Tribunal Superior de Puerto Rico, Sala de San Juan, mediante transacción por Estipulación otorgó relevo total y absoluto al [sic] aquí demandados comparecientes en cuanto a cualquiera reclamación o causas de acción que pudieran haber surgido o surjan en el futuro a favor de la parte demandante compareciente y en contra de los aquí demandados comparecientes como consecuencia de las relaciones entre las partes mencionadas. La referida Estipulación se hizo formar parte íntegra de la sentencia que fuera dictada en el día 23 de agosto de 1978, firmada la misma por el Honorable Flavio E. Cumpiano, Juez Superior, sentencia que es final, firme e inapelable por acuerdo de las partes.

El demandante presentó oposición a la moción de sentencia sumaria, debidamente jurada y acompañada de varios documentos en su apoyo.

La Sala de San Juan del Tribunal Superior dictó sentencia sumaria en los tres casos aquí consolidados y, en su consecuencia, los desestimó por entender que la parte demandante otorgó relevo total y absoluto a favor de la parte demandada por estipulación acordada en el caso civil número 76-1907 (904), por lo que está impedida de establecer reclamación contra la demandada.

La sucesión del demandante acude ante nos en cada

uno de los tres casos señalados precedentemente para que resolvamos si la estipulación suscrita por la demandada Hampton Development Corporation y el causante de aquéllos impide la reclamación de los demandantes en dichos tres casos. Dictamos sendas órdenes dirigidas a la corporación demandada para que mostrara causa por la que no debíamos dejar sin efecto las sentencias sumarias dictadas en los tres casos objeto de revisión, y en su consecuencia remitir al tribunal de instancia para la ventilación de los casos en sus méritos. Compareció la demandada recurrente en escrito que no nos ha persuadido a variar el criterio intimado en nuestra orden para mostrar causa.

El pleito en que se sometió la referida estipulación en que se basa la demandada para invocar el relevo, respecto a toda reclamación de la parte demandante contra ella, era de la naturaleza que pasamos a explicar. Allí, la aquí demandada Hampton Development Corporation demandó, en 2 de abril de 1978, a Mario Román Febres, a su esposa y a la sociedad de gananciales compuesta por ambos, por ciertos daños sufridos como consecuencia de un contrato de compraventa de una finca que habría de desarrollar Hampton, pero que no pudo realizar tal desarrollo por ciertas actuaciones indebidas del vendedor del terreno, Mario Román Febres. Los daños reclamados ascendían a $577,659.29, más intereses, costas y gastos, y $50,000 de honorarios de abogado. El allí demandado Román Febres negó que hubiera incumplido sus obligaciones contractuales, y ripostó con una reconvención por el balance del precio de compraventa de la finca objeto del pleito, y por daños ocasionados por la falta de pago que le obligó a acudir a financiamiento para atender sus compromisos. Hampton replicó y planteó unas defensas afirmativas. El pleito terminó mediante estipulación entre las partes por virtud de la cual desistían de sus reclamaciones respectivas y se concedían mutuos relevos (que explicaremos más adelante), obligándose Hampton a pagar a la represen-

tación legal de los allí demandados la suma de $10,000 por honorarios de abogado y Román Febres a otorgar una cesión de cierto predio de terreno a Hampton.

La estipulación referida es de 15 de agosto de 1978. Ya existían los tres pleitos objetos del presente recurso, los que fueron radicados en 21 de julio anterior. La mencionada estipulación no hacía alusión a estos pleitos. Tampoco se hizo mención de la estipulación de marras en las contestaciones a las tres demandas que motivan el presente recurso.

Los párrafos pertinentes de la estipulación de 15 de agosto de 1978 son los siguientes:

1. Que la parte demandante Hampton Development Corp. (en adelante "Hampton") desiste, con perjuicio, de todas y cada una de las causas de acción alegadas en la demanda radicada el 2 de abril de 1976.

2. La parte demandada, Mario Román Febres y Carmen Andino Vigo, en su capacidad personal y en su capacidad de representantes de la sociedad de gananciales compuesta por ambos (en adelante "los demandados") desiste, con perjuicio de todas y cada una de las causas de acción alegadas en la reconvención radicada el 1ro de junio de 1976.

. . . . . . . .

5. Hampton y sus afiliados por la presente otorgan relevo total y absoluto a los demandados en cuanto a cualesquiera reclamaciones o causas de acción que pudieran haber surgido o surjan en el futuro a favor de las primeras y en contra de los demandados como consecuencia de las relaciones entre las partes mencionadas hasta el día de hoy.

6. Los demandados por la presente otorgan relevo total y absoluto a Hampton y sus afiliadas en cuanto a cualesquiera reclamaciones o causas de acción que pudieran haber surgido o surjan en el futuro a favor de los primeros y en contra de Hampton y sus afiliadas como consecuencia de las relaciones entre las partes mencionadas hasta el día de hoy.

■ La citada estipulación es en esencia un contrato de

transacción(¹) el cual está definido por el Código Civil en su Art. 1709 (31 L.P.R.A. sec. 4821):

> La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo, cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado.

■ A pesar de que el contrato de transacción tiene el efecto de cosa juzgada —Art. 1715 (31 L.P.R.A. sec. 4827)— no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en el que se levanta como defensa. Antonio Gullón Ballesteros, *La transacción. Tratado práctico y crítico de Derecho civil*, Madrid, Instituto Nacional de Estudios Jurídicos, 1964, T. 43, Vol. 2, pág. 161.

La interpretación del alcance del contrato de transacción está especialmente regulado por el Art. 1714 (31 L.P.R.A. sec. 4826):

> La transacción no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma.
>
> La renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre que ha recaído la transacción.

Al comentar el artículo correspondiente del Código Civil español —el 1815— dice Manresa:

> Este artículo, como hemos dicho ya, tiene por objeto determinar la extensión de la transacción o los límites de su objeto, y su fundamento estriba en que siendo por su naturaleza determinada la *litis* o la controversia extrajudicial, necesariamente tiene que tener dicho carácter la transacción, aun cuando se haya llevado a efecto en términos generales, y por tal motivo se le considere general, pues, . . . ni el pacto general puede llevarse a lo desconocido o ignorado, ni

---

(¹) Véanse, *P.R. Glass Corp.* v. *Tribunal Superior*, 103 D.P.R. 223 (1975), y *Amer. Col. Broad. Corp.* v. *Tribunal Superior*, 94 D.P.R. 283 (1967).

para terminar cuestiones puede hacerse de otro modo, porque la transacción surte el efecto de una sentencia, y toda sentencia, para ser congruente y válida, necesita resolver sobre todos los puntos que fueron objeto de discusión en la contienda.

.     .     .     .     .     .     .     .

En cuanto a la renuncia de derechos, a que se refiere el párrafo segundo de este artículo, es también evidente que por más generales que sean sus términos, tiene que seguir la naturaleza de la transacción a que va inherente y entenderse, por tanto, limitada a los mismos objetos, o sea a las diferencias suscitadas por las partes en la controversia sostenida por las mismas, sobre las que ha de versar la transacción. El segundo párrafo del artículo que examinamos, es, pues, una consecuencia de lo prescrito en el primero. Manresa, *Comentarios al Código Civil español*, 6ta ed., Madrid, Ed. Reus, 1973, T. 12, págs. 160–161.

Por su parte Scaevola señala:

[P]arece que la ley quiso llevar a sus extremos la regla interpretativa de restricción en las transacciones, limitándola rigurosamente a los objetos expresamente determinados, o que por una *inducción necesaria* de sus palabras deban reputarse incluídos.

La razón está sin duda en que las transacciones se otorgan, generalmente, con carácter complejo, por las entregas u obligaciones recíprocas de los contratantes, con sacrificios mutuos de régimen excepcional en algunos aspectos, y, por tanto, no deben ser interpretados éstos con extensión, sino limitadamente, aunque sin descuidar lo de la reciprocidad como norma interpretativa.

.     .     .     .     .     .     .     .

El segundo párrafo del artículo 1.815 es otra aplicación concreta de las normas generales de la interpretación contractual, referida a la base de las transacciones, que es la disputa o contienda existente entre ambas partes.

Pero ha de ocurrir, más o menos frecuentemente, que alrededor de la disputa se introduzcan cláusulas de alguna cesión ajenas a la transacción tomada estrictamente, y entonces no habrá otro remedio que aplicarles de lleno las reglas interpretativas de los contratos en común.

El precepto alude a la *renuncia general* de derechos, y

entonces sí que se impone especialmente la aplicación concreta del mismo, la referencia y limitación a la disputa o controversia. (Énfasis en el original.) Scaevola, *Código Civil*, Madrid, Instituto Editorial Reus, 1953, T. 28, págs. 355–356.

■ Por supuesto, en lo que no sean incompatibles con esta norma particular de interpretación, son de aplicación las normas generales sobre interpretación de contratos, particularmente las contenidas en los Arts. 1233 a 1235 (31 L.P.R.A. secs. 3471 a 3473), que giran en torno a la necesidad de descubrir la verdadera intención de los contratantes cuando ésta no surge claramente de los términos del contrato. [2]

En el contrato que nos ocupa, las cláusulas 1 y 2, *supra*, constituyen la esencia de la transacción, pues es en ellas que cada parte desiste de las reclamaciones judiciales que había entablado en contra de la otra en consideración de las obligaciones en que respectivamente incurren en las cláusulas 3 y 4. En adición, mediante las cláusulas 5 y 6, cada parte releva a la otra de, o lo que es igual renuncia a, cualesquiera causas de acción "que pudieran haber surgido o surjan en el futuro a favor de [una parte] y en contra de [la otra] . . . como consecuencia de las relaciones entre las partes mencionadas hasta el día de hoy".

Concluimos que las reclamaciones entabladas mediante los tres pleitos de epígrafe en los cuales la parte recurrente pretende cobrar a la recurrida sendas deudas por concepto de materiales suplidos, no están incluidas en la renuncia de Román Febres a cualquier causa de acción que pudiera haber surgido "como consecuencia de las relaciones entre las partes mencionadas hasta el día de hoy".

---

[2] Manresa, *op. cit.;* Scaevola, *op. cit.* Este último autor señala que la norma del Art. 1714, *supra*, no es más que una extensión algo más restrictiva de la norma general del Art. 1235, *supra*, al efecto de que "[c]ualquiera que sea la generalidad de los términos de un contrato, no debe[rán] entenderse comprendidos en él cosas distintas ni casos diferentes de [aquellos sobre] los que los interesados se propusieron contratar". Pág. 355.

Véase, además, *Merle* v. *West Bend Co.*, 97 D.P.R. 403, 409–411 (1969).

Pasamos a exponer los fundamentos para nuestra conclusión.

En primer lugar, la redacción de las cláusulas 5 y 6 levanta dudas sobre si las relaciones entre Hampton y Román Febres a que se refiere el relevo incluyen *todas* las relaciones entre ellos o sólo las que dan lugar al pleito en el cual se está sometiendo la estipulación y transacción. En particular, no está claro si el calificativo "mencionadas" se refiere a las "partes" o a las "relaciones". (³)

En segundo lugar, si la intención de las partes hubiera sido dar por terminados los tres pleitos de cobro, que ya estaban radicados, es lógico pensar que lo hubiesen señalado específicamente y no como parte de un relevo general e indeterminado que, visto en el contexto de la totalidad del contrato, luce como accesorio a la transacción principal. Además, es lógico suponer que hubiesen sometido el contrato como estipulación en los tres casos que nos ocupan.

■ Tercero, tal como señalan los autores citados, el Art. 1714 previamente transcrito impide interpretar, en ausencia de clara expresión al efecto, que el contrato y específicamente la renuncia general incluye materias totalmente distintas y ajenas a la controversia que motivó la transacción, como lo son las deudas por concepto de materiales suplidos y trabajo que dieron lugar a las demandas cuya desestimación examinamos, en relación a la demanda sobre incumplimiento de contrato de compraventa de una finca que motivó la transacción. (⁴)

■ Un cuarto factor es la aparente ausencia de causa

---

(³) Esta duda suscitada por la construcción sintáctica de la oración se incrementa por el hecho de que era innecesario calificar a las partes como las "mencionadas", pues surgía claramente que el relevo operaba solamente respecto a las relaciones entre Hampton y sus afiliadas y "los demandados" en aquel caso, Román Febres, su esposa y la sociedad ganancial compuesta por ambos.

(⁴) Es pertinente notar que en ninguno de los escritos de la demanda sobre el contrato de compraventa que concluyó con la estipulación, se mencionó la existencia de reclamaciones de Román Febres por materiales suplidos y trabajo realizado.

para la renuncia por parte de Román Febres de sus acciones en cobro de deuda dineraria. Por definición, el contrato de transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de las respectivas pretensiones que dan lugar a la controversia y que han optado por resolver haciéndose mutuas concesiones luego de un proceso de negociación.[5] En el contrato que examinamos Román Febres se comprometió a ceder a Hampton cierto terreno, mientras que Hampton se obligó a satisfacer a Román Febres una suma por concepto de honorarios, resolviendo con ello su disputa sobre el contrato de compraventa de terreno. Adicionalmente cada parte relevó a la otra de cualesquiera reclamaciones que pudieran haber surgido . . ." en aparente reciprocidad. Si interpretáramos que el relevo otorgado por Román Febres incluía un relevo de las tres causas de acción por cobro de dinero, resultaría que éste estaría renunciando a unas acciones ya concretizadas y convertidas en demandas judiciales a cambio de la renuncia de Hampton a reclamaciones meramente potenciales.[6]

Tampoco puede decirse que la renuncia de Román Febres a sus tres demandas de cobro constituyó una concesión adicional o accesoria a favor de Hampton por haber accedido a la transacción del pleito sobre el terreno, puesto que esto no surge ni del contrato ni del resto de la evidencia según apreciada por el tribunal a quo, y como vimos el Art. 1714, *supra*, no permite interpretar que una renuncia general se extiende a materias ajenas al objeto específico o principal de la transacción.

---

[5] Véanse, *P.R. Glass Corp.* v. *Tribunal Superior*, supra; *Amer. Col. Broad. Corp.* v. *Tribunal Superior*, supra; Antonio Moxó Ruano, *Notas sobre la naturaleza de la transacción*, 34 Rev. Der. Priv. 673 (1950); J. Ma. Sanahuja, *Consideraciones sobre la naturaleza del contrato de transacción y principales cuestiones que plantea*, 29 Rev. Der. Priv. 230 (1945).

[6] Scaevola, *op. cit.*, señala que no debe olvidarse respecto a la transacción, que según el Art. 1241 de nuestro Código, 31 L.P.R.A. sec. 3479, en los contratos onerosos las dudas deben resolverse a favor de la mayor reciprocidad de intereses.

A la luz de todo lo anterior podemos concluir que a través de las cláusulas 5 y 6 las partes pretendieron relevarse mutuamente de reclamaciones adicionales que hubieran podido surgir o surgieren de las relaciones establecidas por el contrato de compraventa de terreno como serían aquellas que surgieren de condiciones y cláusulas de dicho contrato que estaban en disputa en la demanda transigida. Esta interpretación es mucho más cónsona con los términos y naturaleza del contrato de transacción que aquella en la que el tribunal a quo se basó para desestimar las demandas mediante sentencias sumarias, por lo que *dichas sentencias serán revocadas y los casos devueltos para la continuación de los procedimientos.*