ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| MARINA PDR OPERATIONS, LLC.<br><br>Parte Apelada<br><br>v.<br><br>RICHARD CHRISTIANSEN, ET. ALS.<br><br>Parte Apelante | KLAN202300927 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F DP2016-0205<br><br>Sobre:<br>INCUMPLIMIENTO DE CONTRATO, DIFAMACIÓN, DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

Comparece el Sr. Richard Christiansen-Santaella (Apelante o Sr. Christiansen Santaella), mediante recurso de *Apelación*, y nos solicita que revoquemos la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario), el 18 de septiembre de 2023, notificada el 19 de septiembre de 2023. Mediante el referido dictamen, el TPI declaró ha lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por Marina PDR Operations, LLC. (Apelada o Marina PDR), y desestimó, con perjuicio, la reconvención presentada por el Sr. Christiansen-Santaella.

Evaluados los escritos presentados por las partes, así como los documento que obran en el expediente, confirmamos el dictamen apelado. Veamos.

# I.

El 26 de septiembre de 2016, Marina PDR presentó una demanda por incumplimiento de un contrato de transacción extrajudicial confidencial suscrito entre ésta y el Sr. Christiansen-Santaella.[1] En la demanda, Marina PDR alegó que el Sr. Christiansen-Santaella incumplió el contrato de transacción suscrito entre estos, luego de que se le notificó el cese de sus servicios profesionales para la empresa. Sostuvo que este reveló la existencia y el contenido del acuerdo confidencial, así como declaraciones y/o comentarios despectivos, denigrantes y difamatorios en contra de Marina PDR, sus afiliados y empleados, a pesar de que se obligó a no hacerlo mediante el referido acuerdo. Adujo que dichos actos causaron daños contractuales y/o extracontractuales ascendentes a $300,000.00 por motivo de la conducta difamatoria en su contra.

El 28 de febrero de 2017, el Sr. Christiansen-Santaella presentó su *Contestación a Demanda y Reconvención.*[2] En síntesis, arguyó que dio fiel cumplimiento al acuerdo transaccional extrajudicial suscrito entre ellos. Sin embargo, que el referido acuerdo era nulo por vicios en su consentimiento pues al momento de suscribirlo y firmar, actuó bajo presión y fue coaccionado por Marina PDR. Asimismo, reclamó en su reconvención daños y angustias mentales, salarios dejados de devengar, honorarios de abogado, intereses, costas y gastos del litigio al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (Ley 80-1976), *Ley Sobre Despidos Injustificados*, y la Ley Núm. 115 de 20 de diciembre de 1991 (Ley 115-1991), según enmendada, mejor conocida como *Ley de Represalias contra el Empleado por Ofrecer Testimonio*.

---

[1] Apéndice, *Alegato en Oposición*, págs. 1-6.
[2] Apéndice, págs. 43-49.

En reacción, el 10 de marzo de 2017, Marina PDR presentó su *Réplica a Reconvención.*[3] En su comparecencia, alegó que la reconvención es contraria al acuerdo válido y exigible firmado entre las partes, sin coacción y debidamente asesorados por sus respectivos representantes legales. Además, señaló que la relación entre las partes no fue una de empleado, sino de servicios profesionales brindados por un contratista independiente. Finalmente, explicó que de aplicarse la mesada solicitada por el Sr. Christiansen-Santaella, ésta fue sufragada mediante la compensación que medió como contraprestación en el acuerdo transaccional extrajudicial posterior al cese de su trabajo con la compañía. Enfatizó que en el acuerdo, el Sr. Christiansen-Santaella aseveró bajo juramento no haber sido objeto de represalias, que el consentimiento para obligarse al acuerdo fue informado, libre, voluntario y con conocimiento de las consecuencias legales y que el documento fue revisado por su representante legal.[4]

Posteriormente, el 8 de octubre de 2019, Marina PDR presentó una *Solicitud de Sentencia Sumaria Parcial* en la que solicitó al foro primario la desestimación de la reconvención presentada, pues el Sr. Christiansen-Santaella estaba impedido de proseguir con las reclamaciones al haber suscrito el acuerdo transaccional extrajudicial y el relevo.[5] Junto a su escrito, propuso 37 hechos materiales incontrovertidos y presentó documentación mediante la cual aseguró que surge la validez del acuerdo. Lo anterior, porque arguyeron que el Sr. Christiansen-Santaella se obligó a no iniciar acción alguna contra Marina PDR en el referido acuerdo.

---

[3] Apéndice, págs. 10-17.

[4] El mismo día, Marina PDR presentó una *Demanda Enmendada*, a los efectos de incluir hechos ocurridos con posterioridad a la presentación de la demanda original. En respuesta, el Sr. Christiansen-Santaella presentó *Contestación a Demanda Enmendada y Reconvención*. Apéndice, págs. 1-6; 10-17.

[5] Los documentos que Marina PDR acompañó con su *Solicitud de Sentencia Sumaria Parcial* son los siguientes: (1) Contestación a Demanda y Reconvención, (2) Deposición del Sr. Richard H. Christiansen Santaella, (3) Consulting Agreement del 1 de febrero de 2014 y (4) Separation Agreement. Apéndice, págs. 18-155.

En respuesta, el 17 de noviembre de 2019, el Sr. Christiansen-Santaella presentó la *Oposición a Moción de Sentencia Sumaria* en la cual reiteró que el acuerdo transaccional extrajudicial mediante el cual se obligó a no presentar acciones contra Marina PDR, no era válido por haberse suscrito bajo una alegada presión indebida.[6] Aceptó los hechos del 1 al 34, 36 y 37 propuestos por Marina PDR, excepto el hecho 35. Además, propuso 26 hechos adicionales que, según su criterio, estaban incontrovertidos. Añadió que el acuerdo era nulo pues su consentimiento fue viciado, y por proveer relevos a reclamaciones laborales que son irrenunciables.

El 12 de diciembre de 2022, Marina PDR presentó la réplica a la oposición, en la cual adujo que el Sr. Christiansen-Santaella no logró controvertir los hechos propuestos, y que los hechos propuestos en su moción no fueron incorporados según requería la Regla 36.3 de Procedimiento Civil.[7]

Luego de evaluar las comparecencias de las partes, el 18 de septiembre de 2023, notificada el 19 de septiembre de 2023, el TPI emitió la *Sentencia Sumaria Parcial* apelada.[8] Mediante esta, el foro primario consignó 34 determinaciones de hechos incontrovertidos. En particular, respecto a la controversia ante nuestra consideración, determinó como hechos incontrovertidos los siguientes:

[…]

9. Christiansen ofreció servicios a la Marina PDR desde el 1 de febrero de 2014 hasta el 15 de abril de 2015, fecha en que la Marina PDR terminó el contrato de servicios profesionales de Christiansen.

10. En la misma fecha en que la Marina PDR terminó el contrato de servicios profesionales de Christiansen, es

---

[6] Los documentos que el Sr. Christiansen-Santaella acompañó a su *Oposición a Moción de Sentencia Sumaria* son los siguientes: (1) Declaración Jurada del Sr. Richard H. Richard Christiansen, (2) Employment, Probationary Period and Confidentiality Agreement, (3) Deposición del Sr. Richard Christiansen-Santaella, (4) Contestación a Primer Pliego de Interrogatorios y Producción de Documentos, (5) Deposición del Sr. Jeremy Griffiths, (6) Marina PDR Salary Analysis, (7) Carta sobre beneficios bajo la Ley COBRA, (8) Formularios 480.6B del Sr. Christiansen para los años contributivos 2014 y 2015, (9) Deposición Sr. Nicholas Prouty, (10) Declaracion Jurada del Sr. Sol Luis Rivera Quiñones. Apéndice, págs. 156-262.
[7] Apéndice, págs. 263-292.
[8] Apéndice, págs. 308-325.

decir, el 15 de abril de 2015, los señores Jeremy Griffiths y José Torres notificaron a Christiansen la terminación de su contrato de servicios profesionales y sometieron para su consideración el Acuerdo.

11. Así las cosas, Christiansen contrató al licenciado Muñoz Noya – a quien conoce desde hace varios años – para que le brindara asesoría legal con respecto al Acuerdo.

12. El licenciado Muñoz Noya orientó a Christiansen respecto al Acuerdo y discutió su contenido con él.

13. El 13 de mayo de 2015, luego de haber recibido la asesoría legal correspondiente y deliberar sobre el Acuerdo, Christiansen suscribió el mismo en la oficina del licenciado Muñoz.

14. Como contraprestación por la firma de dicho acuerdo, Christiansen recibió un pago especial de separación por la cantidad de $49,000 y una contraprestación de $1,000 en consideración de su renuncia voluntaria a toda causa de acción en contra de la Marina PDR bajo la Ley Contra la Discriminación por Edad en el Empleo (ADEA, por sus siglas en inglés).

15. Al suscribir el Acuerdo, las Partes se obligaron, entre otras cosas, a nunca divulgar o publicar, ni causar, permitir o alentar a otros a que divulguen o publiquen, la existencia del Acuerdo y su contenido.

16. Asimismo, al suscribir dicho Acuerdo, Christiansen se obligó a no tomar acción alguna con el propósito de, o que pudiera razonablemente esperarse que así ocurra, causar daños a la Marina PDR o sus afiliadas, empleados, oficiales, directores, miembros, administradores, accionistas, dueños, agentes y/o consultores, o los servicios que estos proveen.

17. Como parte del Acuerdo suscrito entre las Partes, y en apoyo a la desestimación con perjuicio de la Reconvención instada por Christiansen y de que se dicte sentencia sumaria a favor de la Marina PDR, Christiansen también se obligó a no instar acción alguna en contra de la Marina PDR y/o sus afiliadas.

18. De igual forma, y en apoyo a lo anterior, en consideración de los acuerdos mutuos y las promesas realizadas por las Partes en el Acuerdo y con la aceptación por parte de Christiansen, éste se comprometió a liberar de toda responsabilidad a la Marina PDR de cualquier reclamación, presente o futura, conocida o desconocida, acumulada o no acumulada que él haya tenido o pudiera tener en su contra. Específicamente, la cláusula 8 del Acuerdo expone lo siguiente:

> In consideration for the mutual agreements and promises made by the parties in this Agreement and with the acceptance on the part of CHRISTIANSEN of the consideration, CHRISTIANSEN

hereby settles and offers his most complete release of liability in favor of the Released Parties of any claim, present of future, know or unknown, accrued of Non-accrued that CHRISTIANSEN had or may have against the released party, including, but not limited to claims he may have under the authority of the laws and/or Constitution of the Commonwealth of Puerto Rico and/or the United States of America, including, but no *limited to claims under Act. No. 80 of May 30, 2976,* as amended; … *Puerto Rico Act Prohibiting Retaliation in Employment (Act. No. 115 of December 20, 1991);…* breach of contract or any claim pursuant to an express or implicit agreement or damages under Article 1802 or any other provision of the Puerto Rico Civil Code;… any other constitutional, contractual or statutory applicable provision, as it has been or may have been amended pursuant to a federal or Puerto Rico, law, regulation, or ordinance, as well as to any claim… under any other laws and Constitution of the Commonwealth of Puerto Rico and of the United States or under any other legal theory or doctrine.

19. Asimismo, al suscribir el acuerdo, Christiansen acordó transigir toda causa de acción, alegación, reclamación, deuda, controversia, obligación, contrato, acuerdo o daños que tuviese en contra de la Marina PDR. Específicamente, en cuanto a lo anterior, la cláusula 9 del Acuerdo lee de la siguiente manera:

By virtue of this Agreement, CHRISTIANSEN *settles all claims* allegations, actions, causes of actions, debts, controversies, obligations, agreements, contract, promises, and damages against MARINA PDR OPERATIONS or any of its direct or indirect affiliates, know or unknown, accrued or non-accrued, which Christiansen, his children, relatives, heirs, executors, administrators, assigns, successors in interest, agents, proxies, guardians and dependents may have at the present time or might have had in the past.

20. La cláusula 31 del Acuerdo suscrito por Christiansen establece que éste tuvo suficiente tiempo para leer y examinar el mismo, así como también entender plenamente las provisiones contenidas en el mismo y sus consecuencias. Específicamente, la cláusula 31 del Acuerdo señala lo siguiente:

CHRISTIANSEN acknowledges having had sufficient time to carefully read and examine this Agreement and fully

understands the provisions hereof and their consequences.

21. Asimismo, la cláusula 30 de dicho Acuerdo establece que la Marina PDR concedió a Christiansen veintiún (21) días para considerar los términos del Acuerdo y consultar con un abogado o cualquier otro profesional respecto a los mismos.

22. En su deposición, Christiansen testificó que tuvo entre 25 a 30 días para evaluar el Acuerdo.

23. Adicionalmente, según surge de la cláusula 30 del Acuerdo, la Marina PDR le brindó a Christiansen el término de siete (7) días para revocar el Acuerdo luego de haber firmado el mismo. No obstante, y a pesar de lo anterior, Christiansen nunca revocó el Acuerdo en el término de tiempo concedido para ello. Es importante destacar, además, que, durante dicho término, Christiansen nunca alegó nulidad o error en la prestación de su consentimiento, violencia o intimidación, ni la ilicitud de alguna cláusula o condición contenida en dicho Acuerdo que pudiera invalidar el mismo.

24. La última cláusula del Acuerdo establece que las Partes suscribieron el mismo de forma libre y voluntaria.

25. Cabe señalar que, además de proveer su firma a la última página del documento, Christiansen escribió las iniciales de su nombre, en su puño y letra, al margen izquierdo de cada una de las páginas del Acuerdo.

26. A través de la firma del Acuerdo, Christiansen consintió a los términos y condiciones establecidos en el mismo.

27. En su deposición, Christiansen testificó que nadie lo obligó a firmar el Acuerdo. En cambio, declaró que lo hizo por su situación económica.

28. Es necesario resaltar, además, que, estando en su oficina, fue el licenciado Muñoz Noya quien proveyó a Christiansen el Acuerdo para que lo firmara.

29. Así las cosas, luego de la firma del Acuerdo, Christiansen recibió y aceptó un cheque de la Marina PDR por la cantidad establecida en el Acuerdo como contraprestación por haber suscrito el mismo.

[…]

31. No fue hasta el 10 de marzo de 2017, casi dos años luego de haber firmado el Acuerdo el 13 de mayo de 2015, que Christiansen contestó la demanda de epígrafe y reconvino en contra de la Marina PDR.

32. Fue en esta fecha cuando, por primera vez, Christiansen sostuvo que el Acuerdo era inválido y que lo había suscrito bajo presión indebida.

A la luz de tales determinaciones, el foro primario declaró Ha Lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por Marina PDR, y desestimó con perjuicio y en su totalidad la *Reconvención* presentada por el Sr. Christiansen-Santaella. En su conclusión, el TPI determinó que el Sr. Christiansen-Santaella no produjo prueba suficiente para invalidar los elementos indispensables del contrato y por ende, no procedía anular el acuerdo suscrito entre las partes, ni celebrar una vista evidenciaria. Decidió no conferirle credibilidad a las alegaciones sobre presión indebida sufrida al momento de la firma del acuerdo. Por lo anterior, concluyó que el referido acuerdo fue suscrito de forma libre y voluntaria. En cuanto a la alegación del Sr. Christiansen-Santaella de que se trataba de una relación de empleado y no de contratista independiente, el foro primario determinó que la prueba demostró que el contrato fue suscrito por servicios profesionales como consultor y no como empleado, por lo que resultaba inmeritoria la alegación de que el acuerdo es nulo por contener un relevo de reclamaciones bajo la Ley 80-1976.

Inconforme, el Sr. Christiansen-Santaella instó el recurso de apelación de epígrafe en el cual imputó al TPI los siguientes señalamientos de error:

> Erró el TPI al dictar Sentencia Sumaria desestimando la reconvención.
>
> Erró el TPI al descartar los hechos incontrovertidos (con apoyo en la evidencia en récord) presentados en la Oposición a Moción de Sentencia Sumaria.
>
> Erró el TPI al no adjudicar que [entre] las partes existió una relación de empleo.
>
> Erró el TPI al menoscabar los derechos contractuales de [Christiansen].
>
> Erró el TPI al aplicar retroactivamente la Ley 4.
>
> Erró el TPI al no determinar que los hechos incontrovertidos sometidos por Christiansen con referencia específica a la evidencia en récord establecían la existencia de una relación de empleo.

Erró el TPI al no determinar que el Acuerdo era nulo *ab initio*.

Erró el TPI al no determinar que el despido de Christiansen fue injustificado.

Erró el TPI al no establecer la mesada en ley que le corresponde a Christiansen por su despido injustificado.

Erró el TPI al desestimar la reclamación traída bajo la Ley represalias.

En reacción, el 16 de noviembre de 2023, Marina PDR presentó su *Alegato de la Parte Apelada*. Con el beneficio de las posturas de ambas partes, procedemos a resolver.

**II.**

**A.**

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[9] Además, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe controversia real y que requiera ventilarse en un juicio plenario, por lo cual solo resta aplicar el derecho.[10]

En lo pertinente, procede dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada, si alguna, demuestran la inexistencia de controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho procede hacerlo.[11] De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba

---

[9] *Oriental Bank v. Caballero García,* 212 DPR 671; *Rosado Reyes v. Global Healthcare,* 205 DPR 796 (2020); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 115 (2015).

[10] *Birriel Colón y otros v. Econo y otros,* 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Oriental Bank v. Caballero García,* supra.

[11] Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); *González Meléndez v. Mun. San Juan et. al,* 212 DPR 601; *Rosado Reyes v. Global Healthcare,* supra, págs. 808 y 809.

incontrovertible sobre todos los elementos indispensables de su causa de acción.[12]

El promovente de la sentencia sumaria deberá demostrar que no existe controversia real sustancial de ningún hecho material.[13] Un hecho material es definido como aquel que "puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[14] Se podrá derrotar una moción de sentencia sumaria si existe una "duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[15]

Nuestro ordenamiento civil establece unos requisitos de forma con los cuales se debe cumplir al momento de presentar una solicitud de sentencia sumaria. Estos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido.[16]

Toda inferencia que se haga de los hechos incontrovertidos debe efectuarse de la forma más favorable a la parte que se opone a la sentencia sumaria.[17] Nuestro más alto foro ha expresado, que,

---

[12] *Íd.*
[13] Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a); *Birriel Colón v. Econo y otros*, supra; *Rosado Reyes v. Global Healthcare*, supra, pág. 808.
[14] *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129-130 (2012).
[15] *Íd.* pág. 130; *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 756 (2012).
[16] *Oriental Bank v. Caballero García,* supra; Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3.
[17] *Const. José Carro v. Mun. Dorado*, supra, pág. 130; *Pepsi-Cola v. Mun. Cidra et al.,* supra, a la pág. 756.

"el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si verdaderamente existe una controversia sustancial sobre hechos materiales y esenciales".[18] No se dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede.[19]

A su vez, nuestro Tribunal Supremo ha reiterado que, el Tribunal de Apelaciones se encuentra en igual posición que los tribunales de primera instancia al revisar solicitudes de sentencia sumaria.[20] Es por lo que, el Tribunal de Apelaciones "está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario".[21] El Tribunal de Apelaciones no podrá considerar documentos que no fueron presentados ante el TPI, ni adjudicar hechos materiales y esenciales en controversia.[22] Los criterios a seguir por este tribunal apelativo intermedio, al atender la revisión de una sentencia sumaria dictada por el foro primario, han sido enumerados con exactitud por nuestro Tribunal Supremo.[23] A tenor con lo anterior, el Tribunal de Apelaciones debe:

> 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario;

---

[18] *Fernández Martínez v. RAD-MAN San Juan*, 208 DPR 310 (2021); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022)

[19] *Pepsi-Cola v. Mun. Cidra et al.*, supra, pág. 756.

[20] *Birriel Colón v. Econo y otros*, supra; *Rosado Reyes v. Global Healthcare*, supra, pág. 809.

[21] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.

[22] *Íd.* págs. 114 y 115.

[23] *Roldán Flores v. M. Cuebas et al*, 199 DPR 664, 679 (2018).

2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.[24] De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.[25]

**B.**

El Art. 1042 del Código Civil de Puerto Rico de 1930[26], según enmendado, enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico.[27] Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[28] En particular, sobre las obligaciones de naturaleza contractual, el Art. 1206 establece que un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio".[29]

---

[24] *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

[25] *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* 212 DPR 335 (2023).

[26] El Código Civil de Puerto Rico de 1930, fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq*. Para fines de la presente controversia, se hace referencia únicamente al Código Civil derogado por ser la ley vigente al momento que sucedieron los hechos que dieron lugar a la controversia.

[27] 31 LPRA sec. 2992.

[28] *Íd.*

[29] 31 LPRA sec. 3371.

Ahora bien, para que un contrato sea fuente de obligaciones es necesario que concurran los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca.[30] De manera que, al concurrir los referidos elementos nace una obligación; desde el punto de vista del acreedor, existe un derecho a exigir su cumplimiento y, desde la perspectiva del deudor, existe el deber de cumplirla.

Uno de los contratos regulados por el Código Civil es el de transacción. El contrato de transacción es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio".[31]

Por su parte, los elementos constitutivos de un contrato de transacción son: (1) una relación jurídica incierta y litigiosa; (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable, y (3) las recíprocas concesiones de las partes.[32] En términos generales, toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones.[33]

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa.[34] Sobre la causa de un contrato de transacción, nuestro Alto Foro ha expresado que "[e]n conjunto, el

---

[30] Arts. 1213 y 1230 del Código Civil, 31 LPRA secs. 3451 y 3391; *Díaz Ayala et al. v. ELA*, 153 DPR 675, 690-691 (2001).

[31] *López Tristani v. Maldonado*, 168 DPR 838, 846 (2006); Art. 1709 del Código Civil de Puerto Rico, 31 LPRA sec. 4821; *Mun. San Juan v. Prof. Research*, 171 DPR 219 (2007); *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006); *Igaravidez v. Ricci,* 147 DPR 1, 5 (1998).

[32] Art. 1709 del Código Civil de Puerto Rico, 31 LPRA sec. 4821; *Mun. San Juan v. Prof. Research,* supra; *López Tristani v. Maldonado Carrero*, supra; *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 DPR 860, 870 (1995).

[33] *Citibank v. Dependable Ins. Co., Inc.,* 121 DPR 503, 512 (1988); *Sucn. Román v. Shelga Corp.,* 111 DPR 782, 791 (1981).

[34] Art. 1213 del Código Civil, 31 LPRA sec. 3391.

litigio y las recíprocas concesiones constituyen los elementos de la causa".[35] En armonía con lo anterior, en todo contrato de transacción, "[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio".[36]

Nuestro Máximo Foro en *Mun. San Juan v. Prof. Research*, supra, citando a Santos Briz, indica que la "reciprocidad en las prestaciones es la base indispensable de este contrato".[37] Por lo tanto, es necesario que las partes en este tipo de contrato "sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida".[38] Es por ello que, "[l]a consecuencia inmediata será que a falta de recíprocas concesiones no estaremos ante una transacción por falta de causa".[39]

### III.

En su recurso, el Sr. Christiansen-Santaella alega que el TPI erró al determinar que era un contratista independiente, en lugar de un empleado, ignorando aplicar según su criterio, la legislación laboral correspondiente, al amparo de la Ley 80 de 30 de mayo de 1976, según enmendada, mejor conocida como la *Ley Sobre Despidos Injustificados*. Además, que debió haberse aplicado la Ley 80-1976 de manera retroactiva, declarando así el acuerdo suscrito nulo *ab initio*. Señala que, Marina PDR en su solicitud de sentencia sumaria no cumplió con el peso probatorio para demostrar que la relación entre ellos y el Sr. Christiansen-Santaella era una de principal y contratista independiente, por lo que procedía la

---

[35] *López Tristani v. Maldonado Carrero*, supra, pág. 857, citando a E. López de Barba, *El contrato de transacción, su resolución por incumplimiento*, Murcia, Eds. Laborum, 2001, pág. 78.

[36] S. Tamayo Haya, *El Contrato de Transacción*, Madrid, Ed. Thomson/Civitas, 2003, pág. 141. Véase, además: López de Barba, *op. cit.,* pág. 89.

[37] J. Santos Briz y otros, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. IV, pág. 583.

[38] Tamayo Haya, *op. cit.*, pág. 210. Véase: *López Tristani v. Maldonado Carrero*, supra, pág. 857.

[39] Tamayo Haya, *op. cit.,* pág. 144.

denegación del petitorio sumario presentado por Marina PDR. Añade que el acuerdo de transacción que impugna estuvo viciado de nulidad pues en el consentimiento prestado por éste medió intimidación por parte de Marina PDR.

Por su parte, Marina PDR expone que en su *Solicitud de Sentencia Sumaria Parcial* incluyó 35 hechos incontrovertibles, que demostraban que no existía controversia en cuanto a que las partes suscribieron el acuerdo de relevo al terminar su relación de principal y contratista independiente, así como del consentimiento brindado por el Sr. Christiansen-Santaella al firmar el acuerdo de manera libre, informada y voluntaria. Enfatiza que estos hechos propuestos no fueron controvertidos, sino aceptados en su totalidad por el Sr. Christiansen-Santaella, excepto el hecho 35. Los hechos aceptados, versaban sobre la relación de principal y contratista independiente habida entre las partes, el contrato de consultoría, los términos y condiciones, y todos los detalles plausibles del proceso transaccional extrajudicial que culminó con la firma del acuerdo de relevo. En síntesis, expone que el Sr. Christiansen-Santaella no cumplió con los requerimientos de la Regla 36.3 de Procedimiento Civil, por lo que el foro primario actuó correctamente al declarar ha lugar su solicitud.

Por estar íntimamente relacionados entre sí, discutiremos los señalamientos de error en conjunto.

Surge del expediente que en la *Solicitud de Sentencia Sumaria Parcial* presentada por Marina PDR, fueron propuestos 37 hechos incontrovertidos. Estos versaban, entre otras cosas, en el contrato de consultoría que suscribieron las partes en el comienzo de su relación laboral en el 2014 y de la fecha en la que cesaron las labores del Sr. Christiansen-Santaella con Marina PDR, de la cual surgió el acuerdo, sus estipulaciones y su validez.

El Sr. Christiansen-Santaella alega que su consentimiento estuvo viciado al momento de suscribir el acuerdo con Marina PDR posterior a que su empleo cesara, por lo que este era nulo y no podía tener efecto jurídico entre las partes. Sin embargo, no le asiste la razón. Nada en el expediente, ni en la prueba presentada junto a su oposición a la sentencia sumaria en el TPI, demuestra que hubiese sido "presionado" o coaccionado, a tal magnitud que le impidiera conocer las implicaciones de ello. Además, del acuerdo surge que el Sr. Christiansen-Santaella contaba con un término de siete (7) días para poder anularlo, luego de su firma.[40] Asimismo, el Sr. Christiansen-Santaella declaró que nadie le obligó a firmar el acuerdo, y que se vio obligado a hacerlo por sus circunstancias económicas.[41]

En la *Oposición a Moción de Sentencia Sumaria,* específicamente en la página 20, el Sr. Christiansen-Santaella aceptó los hechos propuestos por Marina PDR. En lo especifico, afirmó que "los hechos 1 al 34, 36 y 37 no están en controversia".[42] Ello demuestra que los hechos no fueron controvertidos, y que al contrario de lo requerido por la Regla 36.3 de Procedimiento Civil, se limitaron a proponer nuevos hechos que no estaban del todo relacionado a los hechos propuestos por Marina PDR. Mas aún, no presentaron prueba en contrario para demostrar sus alegaciones en cuanto a que el acuerdo era nulo, por haberse firmado bajo una alegada "presión indebida", toda vez que no constituyeron hechos materiales para rebatir lo alegado por Marina PDR.

Por lo anterior, el TPI acogió los hechos propuestos incontrovertidos por Marina PDR y emitió las determinaciones de hechos que expusimos anteriormente. Ello, en ausencia de evidencia

---

[40] Apéndice, pág. 154.
[41] Apéndice, pág. 103. Declaración Jurada del Sr. Christiansen-Santaella, pág. 207, líneas 6-24.
[42] Apéndice, pág. 175.

que demostrara lo contrario a lo alegado por Marina PDR. Así las cosas, determinó que el acuerdo suscrito entre el Sr. Christiansen-Santaella y Marina PDR es válido, y que fue firmado de manera voluntaria, informada y sin coacción. En fin, las determinaciones de hechos consignadas en la *Sentencia Sumaria Parcial* están sustentadas en el contenido de los documentos presentados en el foro primario para establecer que no se probaron los elementos necesarios para que prosperaran las causas de acción alegadas en la demanda. Es decir, que el acuerdo suscrito entre las partes es válido, por lo que no procede declarar su nulidad.

Luego de examinar la totalidad del expediente, concurrimos con el tribunal sentenciador en su proceder al desestimar la reconvención presentada por el Sr. Christiansen-Santaella y declarar ha lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por Marina PDR. De conformidad con lo antes esbozado, en consideración al ordenamiento pertinente y a la totalidad del expediente, resolvemos que procede confirmar la *Sentencia Sumaria Parcial* emitida por el foro primario.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia Sumaria Parcial* apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Rivera Marchand concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones